UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-00165-GNS-LLK

KRYSTLE LEISER, Individually and
as Next Friend of Z.E.R., a minor                                    PLAINTIFFS

v.

MSR & ASSOCIATES, LLC, et al.                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant MSR & Associates, LLC's Motion for
Summary Judgment (DN 26) and Defendant Jimmie Keeven Taylor's Motion for Summary
Judgment (DN 28).  The motions are ripe for adjudication.  For the reasons outlined below,
Defendant MSR & Associates LLC's Motion for Summary Judgment is **GRANTED** and
Defendant Taylor's Motion for Summary Judgment is **DENIED**.

## I.      STATEMENT OF FACTS

On July 25, 2020, minor Plaintiff Z.E.R. was injured while using a slide attached to a boat
rented from Defendant MSR & Associates, LLC ("the Marina").  (Compl. ¶ 12, DN 1-1).  Z.E.R.
had a portion of her finger severed after it was caught in a metal handle affixed to the slide.
(Compl. ¶¶ 17, 19).  The boat was a Bahamas #270 Tritoon Upper Deck, which the Marina
purchased from Defendant Lockhart Marine, LLC ("Lockhart Marine").  (Compl. ¶ 14; Def.'s
Mot. Summ. J. Ex. 1, at 5, DN 26-1).  Defendant Jimmie Keeven Taylor ("Taylor") owns Lockhart
Marine and Defendant Lockhart Marine Manufacturing, LLC ("Lockhart Manufacturing").
(Compl. ¶ 6; Answer ¶ 1, DN 18).

Krystle Leiser ("Leiser"), individually and on behalf of Z.E.R., initiated this product
liability action in Trigg Circuit Court (Kentucky) alleging Z.E.R.'s injury resulted from the

negligent design of the slide handle.  (Compl. ¶¶ 21, 23-28).  The Marina has asserted cross-claims seeking indemnity from Lockhart Marine, Lockhart Manufacturing, and Taylor.  (Answer & Cross-cl., DN 1-1).  Taylor subsequently removed the action to this Court.  (Notice Removal, DN 1).  The Marina and Taylor have filed answers, but Lockhart Marine and Lockhart Manufacturing have not entered an appearance.  (Answer & Cross-cl.; Answer; Def.'s Mot. Summ. J. 7, DN 26 [hereinafter Marina Mot.]; *cf.* Pl.'s Resp. Def.'s Mot. Summ. J. 4, DN 31 [hereinafter Pl.'s Resp. Marina Mot.] (alleging that Lockhart Marine and Lockhart Manufacturing are evading service)).

The Marina and Taylor have separately moved for summary judgment, which Leiser opposes.  (Marina Mot.; Def.'s Mot. Summ. J., DN 28 [hereinafter Taylor Mot.]; Pl.'s Resp. Marina Mot.; Pl.'s Resp. Def.'s Mot. Summ. J., DN 30 [hereinafter Pl.'s Resp. Taylor Mot.]).

## II.    JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon diversity of citizenship. *See* 28 U.S.C. § 1332(a).

## III.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the evidence, however, is "not required to be resolved conclusively in favor of the

party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).  When considering the evidence, the Court must view it in the light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV.   DISCUSSION

### A.   The Marina's Motion for Summary Judgment

The Marina argues that it is exempt from liability for Z.E.R.'s injury because it is entitled to protection under Kentucky's "middleman statute" within the Kentucky Product Liability Act ("KPLA").  (Marina Mot. 5-12); *see* KRS 411.340.  The KPLA is applicable to "any action brought for or on account of personal injury . . . caused by or resulting from the manufacture, construction, [or] design, . . . of any product."  KRS 411.300(1).  Despite the lack of enumerated causes of action in the Complaint, the only relevant allegation asserts that "[t]he handle's design and location made it a hazard which was likely to lead to injury."  (Compl. ¶ 21).  Leiser's sole claim is that the injury was caused by the negligent design of the handles on the boat's slide; therefore the KPLA applies to this action.

Kentucky's middleman statute provides that, "a wholesaler, distributor, or retailer who distributes or sells a product . . . shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product . . . ."  KRS 411.340.  The statute was enacted "to protect only those distributors, wholesalers, or retailers who have no independent responsibility [for] the design or manufacture of a product."  *West v. KKI, LLC*, 300 S.W.3d 184, 192 (Ky. App. 2008) (citation omitted); *accord Franke v. Ford Motor Co.*, 398 F. Supp. 2d 833, 841 (W.D. Ky. 2005).  To apply, two prerequisites are necessary: (1) the manufacturer of the product must be identified

and subject to the court's jurisdiction; and (2) the middleman must demonstrate that the "product was sold . . . in its original manufactured condition or package, or in the same condition such product was in when received . . . ."  KRS 411.340.  The exemption, however, does not apply where the middleman breached an express warranty or knew, or reasonably should have known, that the product was defective.  *Id.*

### 1.    *Manufacturer Identified and Subject to Jurisdiction*

The parties dispute whether the manufacturer has been identified.  Leiser contends that it remains unclear how Taylor, Lockhart Marine, and Lockhart Manufacturing are connected to the boat's manufacture.  (Pl.'s Resp. Marina Mot. 4-5).  The Marina, however, furnished the boat's Certificate of Origin and its capacity plate, both of which list Lockhart Marine as the manufacturer.  (Def.'s Mot. Summ. J. Ex. 2, at 3-4, DN 28-2).  Taylor, as owner of Lockhart Marine, also confirms that entity as the boat's manufacturer.  (Taylor Mot. 4; *see* Taylor Decl. ¶ 7, DN 28-3).  Leiser points to no other evidence indicating manufacture by any entity other than Lockhart Marine.  Thus, the manufacturer is sufficiently identified to satisfy the statute.

Furthermore, Lockhart Marine is subject to this Court's jurisdiction.  Although Lockhart Marine has not yet entered an appearance in this action, the parties agree it is subject to this Court's jurisdiction; Taylor, on behalf of Lockhart Marine, travelled to Kentucky from Arkansas to contract with the Marina and subsequently to deliver the subject boat.  (Marina Mot. 7; Pl.'s Resp. Marina Mot. 5; Head Dep. 13:1-9, 27:10-26, 32:22-33:4, 33:10-19, July 22, 2022, DN 26-2).  These actions constitute purposeful contacts sufficient to confer jurisdiction over Lockhart Marine under the Due Process Clause and Kentucky's long-arm statute, as Leiser's claims arise out of the boat's alleged defective nature.  *See* KRS 454.210(2)(a); *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 317 (1945) (citations omitted); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).

### 2. *Similarly Situated to Distributor or Retailer*

The Marina contends that it is entitled to the application of the middleman statute because it is similarly situated to a distributor or retailer despite the fact that it owned the boat and rented it to patrons. (Marina Mot. 7-9); *cf.* KRS 411.340. Kentucky courts have yet to determine whether owner-renters' products fall within the scope of the middleman statute; therefore, this Court must make an educated prediction as to how they would decide the issue. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

The Marina cites to a Kentucky Court of Appeals case to support its proposition that owners who rent products fall within the scope of the middleman statute. (Marina Mot. 7-8 (citing *West*, 300 S.W.3d 184)). In *West*, Kentucky Kingdom operated a rollercoaster at its amusement park which caused an injury, and the Kentucky Court of Appeals signaled a willingness to expand the definition of "wholesalers, distributors, and retailers" beyond the middleman statute's plain language. *West*, 300 S.W.3d at 187, 191-92. Ultimately, the exemption did not apply, not because Kentucky Kingdom did not sell the product, but because the amusement park operator was involved in the assembly of the ride. *Id.* at 192. The court explained that the KPLA was intended to protect those who had "no independent responsibility for the design or manufacture of a product . . . ." *Id.* (citation omitted).

In the present case, the Marina ordered several boats from Taylor in a process similar to "ordering a new car," where it selected the boats and requested optional features. (Marina Mot. 2; Head Dep. 10:16-11:1). The Marina ordered a boat with a slide, but was not otherwise involved in the design of the slide or the boat; it simply included the optional slide as an existing, albeit

optional, design feature.  (Head Dep. 11:7-13).  Unlike Kentucky Kingdom, the Marina did not have any involvement in the design or construction of the boat; Lockhart Marine manufactured and delivered the boat to the Marina as a finished product.

Considering the Court of Appeals' apparent willingness to broadly interpret KRS 411.340 and the Marina's lack of involvement in the design, manufacture, or assembly of the boat or its components, Kentucky courts would likely extend the protection of the middleman statute to the Marina.  *Cf. Smith v. Leveelift, Inc.*, No. 3:04-02-JMH, 2005 U.S. Dist. LEXIS 22895, at *14-15 (E.D. Ky. Oct. 6, 2005) (applying the middleman statute to shield the owner of a scissor lift from liability where the owner rented the lift to a company whose employee was injured).   As the Marina had no independent responsibility in the design or manufacture of the boat, it is the type of party the statute was intended to protect.

Leiser cites an unpublished Kentucky Court of Appeals opinion for the proposition that the Marina cannot rely upon the middleman statute because it was offering a service.  (Pl.'s Resp. Marina Mot. 8 (citing *Hughes v. Taylor Reg'l Hosp., ASC.*, No. 2010-CA-001965-MR, 2012 Ky. App. Unpub. LEXIS 100 (Ky. App. Feb. 3, 2012))).  In *Hughes*, a plaintiff sued a hospital for injuries caused by a shampoo cap provided to him by the hospital and applied by his girlfriend.  *Hughes*, 2012 Ky. App. Unpub. LEXIS 100, at *1-2.  The Court of Appeals ultimately determined that the middleman statute applied to the hospital because it gave the shampoo cap to the plaintiff in the same condition in which it received it, and had no part in its application, design, or manufacture.  *Id.* at *11-13.  In a footnote, the court added:

> This case may have presented a different question if the Hospital were to allow patients to participate in such activities as self-service x-rays, lab work, etc. However, a fundamental difference between services of that nature and the application of a shampoo cap is that the aforementioned services could be considered traditional hospital services, whereas the application of a shampoo cap is not necessarily a traditional service. . . . This is certainly different from a case

> where the hospital provides a service with the cap or the application of the cap could
> be related to the condition for which the patient is being treated.

*Id.* at \*13 n.3.  Leiser quotes this footnote to differentiate this case from *Hughes* because renting a

boat to patrons is a traditional marina service, unlike the mere distribution of a shampoo cap.  (Pl.'s

Resp. Marina Mot. 8).  The *Hughes* decision further stated, however:

> In the latter case, the hospital is providing a service with the product as opposed to
> merely providing a product to be applied by the patient or his designee . . . at a time
> when the hospital had no knowledge of any defective condition and was not in
> control of the instrumentality at the time of application.

*Hughes*, 2012 Ky. App. Unpub. LEXIS 100, at \*13-14 n.3.  Like the hospital, the Marina did not

control the boat, nor was it aware of any defects. The individual who rented the boat, along with

Leiser and others, controlled of the boat and the Marina was never alerted to any danger associated

with the slide handle.  (*See* Compl. ¶ 12; Head Dep. 20:13-21:4; *see also* Head Dep. 21:11-18

(noting that the Marina removed the handles from all of the slides on its boats after Z.E.R.'s injury

to prevent further risk of injury)).  The dicta offered in *Hughes*, therefore, does not affect the

conclusion that Kentucky courts would apply the middleman statute to the Marina under the facts

of this case.

Leiser also argues that there are significant differences between the Marina and the

wholesalers, distributors, and retailers enumerated in the middleman statute.  (Pl.'s Resp. Marina

Mot. 5).  She contends that "product liability should apply to lessors with even greater force than

to manufacturers and sellers, since lessees of goods might have less of an opportunity to inspect a

leased item than would a purchaser" and would thus "rely to a greater extent upon implied

assurance by the lessor that the product is safe for its intended purpose." (Pl.'s Resp. Marina Mot.

5 (citations omitted)).  This argument is unsupported by citation to any Kentucky decision.  As

previously noted, the statute at issue was intended to protect those "who have no independent

responsibility for the design or manufacture of a product . . . ." *West*, 300 S.W.3d at 192 (citation omitted); (*cf.* Pl.'s Resp. Marina Mot. 5 (supporting her assertion by only citing distinguishable cases from outside this jurisdiction)).  That policy plainly applies to the Marina and Leiser's proposed policy considerations do not comport with Kentucky law.

### 3.   *Original Manufactured Condition*

There is no evidence in the record to suggest that the Marina made any alterations to change the boat from its original manufactured condition.  The Marina simply performed regular maintenance, such as oil changes, and added utility features, such as life jackets, seating cushions, and a fire extinguisher.  (Head Dep. 12:10-15, 23:14-24:5); *cf.* KRS 411.320 (stating that product alteration and modification includes the "failure to observe routine care and maintenance").  None of these actions resulted in substantial or material changes to the boat, particularly to the slide and handle. Therefore, Leiser has not presented any evidence of alteration to affect the application of the middleman statute.

### 4.   *Breach of Express Warranty*

There is similarly no evidence to suggest that the Marina breached any express warranty when it rented the boat.  A party makes an express warranty where it "make[s] 'an affirmation of fact or promise . . . to the buyer' that (1) relates to the goods and (2) becomes part of the basis of the bargain between" the parties. *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015) (quoting KRS 355.2-313(1)(a)).  Leiser has not alleged any express warranties were made.  Thus, there are no warranties to preclude the application of the middleman statute.

### 5.   *Notice of Defect*

Finally, Leiser has failed to demonstrate that the Marina knew of the alleged defect.  "Plaintiffs must allege some more specific or special knowledge of dangerousness by the retailer

to avoid the protections afforded by KRS 411.340." *Weixler v. Paris Co.*, No. 3:02CV-390-H, 2003 U.S. Dist. LEXIS 444, at *6 (W.D. Ky. Jan 2, 2003).  Nothing in the record contradicts the Marina's assertion that it was never alerted to any injuries caused by the slide, the boat, or any other boat it owned or leased.  (*See* Head Dep. 20:13-21:4).  Therefore, there is no factual dispute regarding the lack of notice to the Marina of any allegedly dangerous condition related to the boat.

Accordingly, the Marina is entitled to the Kentucky middleman statute's liability exemption as to Z.E.R.'s injuries.  As such, the Marina's motion for summary judgment is granted.[1]

### B.   Taylor's Motion for Summary Judgment

#### 1.   *Leiser's Claims*

Taylor moves for summary judgment on Leiser's claims, arguing that she cannot maintain a product liability case against him individually or as Lockhart Marine's owner.  (Taylor Mot. 8-13).  In response, Leiser argues Taylor's motion is premature, as the parties agreed only to conduct discovery and submit dispositive motions regarding applicability of KRS 411.340 to the Marina.  (Pl.'s Resp. Taylor Mot. 2-4).  She argues that his motion should be denied because discovery has not been conducted regarding Taylor's liability.  (Pl.'s Resp. Taylor Mot. 2-4).

The Court conducted a telephonic conference with the parties on March 21, 2023.  (Order, DN 39).  Based on that conference, it appears that the parties intended to bifurcate the proceedings by conducting discovery only as to the middleman statute and then as to the merits of the remaining claims after the determination regarding the Marina's liability.  For that reason, Taylor's motion is denied without prejudice as premature.  This matter will continue to be referred to the Magistrate

---

[1] In the event this Court concluded that the KPLA did not apply, the Marina alternatively argued issues of simple negligence.  (Marina Mot. 12-14).  There is no negligence claim asserted in the Complaint, however, only a claim for defective design.  (*See* Compl. ¶ 21).

Judge for expedited discovery regarding the merits of Leiser's claims, after which Taylor may renew his motion. (*See* Referral Order, DN 37).

        **2.**    ***The Marina's Cross-Claims***

In addition to Leiser's claims, the Marina also asserted a cross-claim for indemnity and apportionment against Taylor. (Answer & Cross-cl. 7-8). Taylor now seeks summary judgment in his favor on this cross-claim. (Taylor Mot. 12-13). The Marina takes no position regarding Taylor's motion if its own motion for summary judgment is granted. (Def.'s Reply Mot. Summ. J. 10, DN 32). As the Marina's motion has been granted, there is no liability for Taylor to indemnify. Therefore, Taylor's motion as to the Marina's claims is granted.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant MSR & Associates, LLC's Motion for Summary Judgment (DN 26) is **GRANTED**. MSR & Associates, LLC shall be terminated as a Defendant in this action.

2.    Defendant Taylor's Motion for Summary Judgment to Dismiss Individual Defendant, Jimmie Keeven Taylor (DN 28) is **DENIED WITHOUT PREJUDICE**.

3.    MSR & Associates, LLC's cross-claim against Taylor is terminated.

4.    All matters regarding scheduling for further discovery are hereby referred to the Magistrate Judge.

Greg N. Stivers, Chief Judge
United States District Court

March 29, 2023

cc:    counsel of record